Good morning, Your Honor. My name is Jana Hendricks and I represent appellant Randy McMurray. Just look at me and yell at me. I'm worried about my accent. That's good. I'm worried about my accent, but I figure since you work... I don't hear an accent. Okay. Well, it's similar to Judge Alex Kaczynski accent. It's more Judge Kaczynski accent, more. It's similar to his accent, so I figure you probably... Kaczynski? Yeah. He has a Russian accent, so I do. He has a Romanian accent. Oh, yeah. It's similar, Slovenian. I have a Russian accent. Well, I'm Armenian, so I'm... Yeah, I understand Russian, yeah. English is not my first language. Yeah, it's all right. This case is, I'm sure this panel already has read the briefs and presents too many issues, and it's hard to figure which one I should start with, other than reciting the fact that preliminary injunction was granted, and we believe it was wrongfully granted. After the preliminary injunction was granted, we have discovered that the corporation that obtained that preliminary injunction was not even in the legal existence. So we raise the standing issue in this court. No, Your Honor. They were not in existence because of all the other positions they have taken in various other courts stating that the Cochrane firm, PC, is not a legal entity. And we've submitted all the detailed factual information. Actually, me and myself and my co-counsel were asked to dismiss the very entity that later they claimed had changed their name. So it was in the process of meet-and-confer communications that we received an email saying, Cochrane, Cherry, Given, Smith, and Sistrong, PC, Alabama Corporation, locks minimum contacts with California. They also asked to dismiss another entity, all the players, and at the end, this Lane. So we checked. We dismissed them because we believed that they probably don't have anything to do with this case. While we were on the phone with the counsel, I just thought, I'll check. You know, I don't understand how many shells they have. And I discovered there is no Cochrane firm, PC. That was in March, I believe it was March 10th. And we immediately brought to the attention of counsel and said, well, where is the proof if we dismiss Cochrane, Cherry, Given, Smith, and Sistrong, PC? Who is the Cochrane firm, PC? How come we don't see it on the Secretary of State website? Well, a few days later, after we pressed a little more, response came, well, there was a mistake. Cochrane, Cherry, Given, Smith, and Sistrong changed its name. Well, the official name was the Cochrane firm, Cochrane, Cherry, Given, Smith, and Sistrong. Cochrane firm, yes. But in the several. Both together. No. Cochrane firm. I thought that was the Alabama name. Alabama entity. But in. What was the Alabama entity's name? Alabama entity's name is Cochrane, Cherry, Given, Smith, and Sistrong. I thought it was the Cochrane firm, Cochrane, Cherry, Given, Smith. Slash. I think they had some amendments, yes. No, not the amendment. The name before the amendment. The name before the amendment. I believe so. It's Cochrane firm slash, Cochrane, Cherry, Given, Smith, and Sistrong. Right. But in. So if you looked for it, you would have found that. It didn't, it didn't, it didn't show as a Cochrane firm PC as a separate. But the issue here, Your Honor, that very entity were asked to be, to dismiss that very entity. That Cochrane, Cherry, Cochrane firm slash Cochrane, Cherry, Given, Smith, and Sistrong. So we understood that to be the same entity and during our meet and confer communications. Then after further research, we found that in the case of Jacqueline Williams in Mississippi court. There was a motion to dismiss filed on the grounds that the Cochrane firm is not a legal entity and it does not exist as a legal entity. And that was filed on January 17, 2012. We also discovered that there was a Georgia case where they claimed that Cochrane, Cherry, Given, Smith, and Sistrong, Alabama Corporation, has no relations to the Cochrane firm. And it's not the same. We received the amendment. The amendment stated that the articles were changed. The purported date was February 10th. However, the purported article of amendment in order to comply with the Alabama code, they had to refer to name reservation. The name reservation was obtained a year later. So it couldn't have been the amendment because you cannot in 2012 refer to name reservation that's dated March 2013, which was exactly after our initial meet and confer session. So, and then, interestingly enough, that the amendment itself says that, well, we're now ratifying all the acts taken on behalf of the Cochrane firm going back to 2005 and all the benefits of the Cochrane firm. We filed appropriate motion. We submitted all the evidence. In response, we got argument that a Georgia case did not pertain to Alabama, Cochrane, Cherry, Given, Smith, and Sistrong PC. It was talking about Georgia PC, which is we presented certificate that at that time there was no entity in Georgia of Cochrane, Cherry, Given, Smith, and Sistrong. In fact, there was no legal entity. They had any name of Sistrong or Cochrane registered in 2007. Let me ask you a question. I never really heard of law firms franchising or people franchising law firms. Is there a requirement that the franchisee indicate in the firm name that it's a, it's a, what's the word again? It is a member of a franchise? Yes, Your Honor, absolutely. And the requirements were, I can just. I mean on the letterhead. It's their state bar rule, which is California state bar rule. To me, this is also the most interesting and important argument. But I wonder, first of all, whether it was properly raised. I know that you've been sort of saying this all along, but in terms of the district court brief. Yes. Essentially you had a sentence and then you had an affidavit. Is that right? Yes. We had a declaration of, if I may respond, Your Honor, to Judge Ferguson. ABA formal opinion, and ABA is the rule that Pelley is relying on. Bill. ABA formal opinion 94388 says if a law firm licenses its name to other firms, all firms licensed must operate as a single firm. And that was in fact, it's not that the ethics expert had to tell that to plaintiff. It was attached. It's a volume 7 on the page 1479. It's attached to the plaintiff's Second Amendment complaint. It was McMurray's response when they issued cease and desist letter. He basically told them, look, I've been negotiating for a long time. You want to engage me into an illegal fee-splitting, illegal arrangement when we're trying to be one firm, but you don't want to put up any liabilities. And to answer, Judge Ferguson, your question, the reason it is so important, because as the expert said to the district court, this is not a chicken. This is not a hamburger. This is law firm's name. It communicates the law firm's name under the rules of professional conduct, Rule 100. It is a communication with the public. It shall not be misleading. Well, this is all part of your unclean hands argument. Is that the concept, that they're not entitled to trademark protection because somehow they've engaged in other activity that represents unclean hands? That's essentially what this argument is all about, correct? Absolutely, Your Honor. The premise is that as a ---- But don't they have to intend to defraud clients by having this corporate structure? And isn't there, aren't there other treatises that suggest that it's permissible to operate as a franchise? No, Your Honor. Absolutely not. And that's why it was very important to consider what has taken place in Jacqueline Williams' case and Mary Neal's case. Because ---- But one of the problems is we don't really know what's taken place anywhere because we don't really know what the relationship, internal relationships are between these firms precisely. Yes. Because it hasn't been developed on the record at all at this point. Well, Your Honor, as far as I believe that from jurisdictional standpoint, because of the Article III standing issue ---- Well, leave that aside now. Okay. Let's just talk about this one issue, which to me, as I say, is the most significant one, which is whether they're entitled to ---- whether this firm, whether their franchise and licensing arrangements are such that it's sort of an unclean hands argument. But as I understand it, it's an unclean hands argument that is specific to the trademark context, and essentially says if you're going to come in and complain about confusion because of a trademark, you have to have a ---- you can't be misrepresenting what in fact you are with this mark, with this trademarked name. And so if you say you're a firm, you have to be what's known to be a firm. And if you're not, then essentially you can't enforce the trademark. It's a little more specific. Is that accurate? Yes, Your Honor. Absolutely. All right. But what do we know exactly about ---- we have this one declaration, but that's really about what would be valid or not valid with regard to franchising under California law and ABA and ethics rules. But what do we know precisely about what this franchise operation is? The evidence was before the district court. The evidence was submitted in a form of declaration of McMurray himself. The evidence was submitted in a ---- What evidence? So what's the evidence? The evidence was that they never operated as one firm. After the death of Johnny ---- In the ways that matter, i.e., with regard to liability and conflicts and ---- Absolutely. Absolutely. And where is that exactly, Your Honor? And it was in the declaration of Randy McMurray. And it was conceded by the appellant ---- I'm sorry, by the plaintiff in that their structure ---- The declaration of Vicki Fisher Magasnin. Is that the one? No, she's ---- Which declaration are we talking about? I'm talking about the appellant's declaration, Randy McMurray, because he was part of their structure before. And the evidence of what they wanted that office to be, the Cochran Firm of Los Angeles, is actually attached to their Second Amendment complaint. All those proposed licensing agreements are attached. So we gave it to the expert, which was Ellen Peck, and she made an ---- and she conducted the analysis from a standpoint of California rules of professional conduct, from a standpoint of ABA and also Alabama ethical rules. And her conclusion was that it was unequivocally that their entire trademark was misleading because they purport and pretend themselves to be as a one firm. And it is expensive to be one big law firm, meaning that you're responsible, you're vicariously liable for everything that's going on in the local offices and malpractice insurance and all that. It's much more profitable just to license the name and collect the fees for licensing. But that's, in essence, that's what they're doing. They do not share any liabilities. And the case law that they didn't cite, a respondent brief did not cite any case law which allows such a structure. They cited to the Los Angeles Bar Association formal opinion 423 from 19 ---- And what did the district court do with this argument? I'm sorry? What did the district court do with this argument? It completely was wrong. Because he did rule that their structure is permissible under ABA rules, which was wrong. And he actually stated that he is the arbiter of what's permissible under the California rules. But he is not. If the structure violates the rules of professional conduct in California, such as fee splitting or splitting fees with non-lawyers, now we know that the percentage of the ---- from the cases proceeds, settlements, goes to the family, sisters of Johnny L. Cochran. So they're collecting a piece of cut from every case nationwide. They're not lawyers. They entered into the settlement agreement. That settlement agreement is attached. And it was attached to their opposition to motions. It's illegal per se to split fees with non-lawyers. I mean, this is just a scheme, grand scheme to ---- Well, it can't be illegal to give to an estate of somebody who's died fees that he was entitled to. I agree, Your Honor. Except the settlement agreement, if someone to examines, they are not paying for Mr. Cochran's share of his whatever he is entitled to. They're paying for licensing of trademark. And it is, yes, there is no precedent where a lay person can own a law firm's trademark. I find it very ---- my reasoning is that would amount to financial arrangements with non-lawyers. Because we're talking about law firms. But here the family is getting the language actually there until 2025. And they're getting percentage of everything that licensees are collecting or all the settlement proceeds. No client knows about it. No client consented. And they can't even consent. Even with a consent, it's illegal because it's beyond what Mr. Cochran's share would be. And their own partnership agreement, which is plaintiff content, admits that it was the governing ---- Mr. McMurray was participating and was himself practicing the same law under the same, what you're saying, unethical scheme? No, Your Honor. Why? Here's the factual difference here. Mr. McMurray was in 1999 approached by the group, by Johnny L. Cochran, to join as a managing partner. They admit that they presented him to the public as managing partner. He worked. They claimed that it was for appellation only. I don't know what it is. But to me that means you're lying to the public. So that's the point. Mr. McMurray worked there when in 2005 Johnny Cochran had died. He explains in his declaration that the main office, Johnny Cochran's original office, was in debt. And it was in a bad financial shape. So in 2006, the plaintiff said that they wanted to get rid of the liability and offered him to take over the ownership. So under bona fide succession, he believed he paid the debt, he obtained $900,000 loan, put his own residence as a collateral to continue legacy of the person, his partner, that he believed he wanted to continue under bona fide succession. So essentially you're saying you think he had the right to use the name the Cochran Law Firm or something with Johnny Cochran's name because of his prior relationship with Cochran. Absolutely. And that was not misrepresented. Absolutely. Bona fide succession is a principle where if even a retired partner or deceased partner dies, obviously the partners can continue. But he was trying and he was, in fact, taking advantage of this group advertising and so on for several years. No, Your Honor. They, in fact, the problems they had, as explained in the Declaration, they were trying to force McMurray to sign licensing agreement. McMurray was saying, look, I don't understand, maybe I don't understand too many ethical rules, but it doesn't sound right. You're not participating in anything. You're not advertising. It's my money I'm spending. It's my money I'm spending advertising. He wanted them to advertise. He wanted to advertise more than they were advertising, not advertise. Your Honor, the firm that calls itself national firm, other than maintaining website, they didn't, we're talking about something that has happened after 2007. Because before 2007, they're all, their structure was similar to one entity, because while Johnny Cochran was alive, it was structured as one entity. After 2007, they were not participating in any advertising. He was solely liable for lease. He was liable for all the overhead. They had no involvement. And they were negotiating about having a structure, but making that structure, A, business-like, visible, and not. So you say while Johnny Cochran was alive, it functioned at one entity. Yes. And how many satellite firms were there? I believe it was one New York office. It was Los Angeles office. One in Alabama. One in Alabama. Well, yes, one in Alabama. I don't know. They're sort of entrepreneurs. I don't know how much of practicing law they were doing. But mostly it was marketing and advertising. I know it was in Alabama. I don't remember. At what point did the structure change? So your position is when Johnny Cochran was alive, it was functioning properly as a national law firm? Yes. And at some point in time, that changed? Yes. When did that change? That changed in 2007 when the state of Johnny L. Cochran took position that they have the trademark that is registered individually under the name of Johnny Cochran. And the Cochran firm, which is, let's call them Cochran firm, they took position that, well, Johnny assigned that right for his name and likeness to the partnership, which was Cochran firm LLP at California LLP. And when we made an argument in opposition to a preliminary injunction, the point was that the state never owned it. That name and right to use Cochran's name, according to the plaintiff's own admission, was assigned already to the partnership, California partnership. And since none of them were even partners in California, the only remaining partner after the death of Johnny Cochran was Randy McMurray. So that somehow set up this franchise structure you're saying is illegal? No. That's before they became a franchise. They had the California LLP, which is they described that LLP in their second amended complaint. And after the death of Johnny Cochran, apparently there was a dispute between the family, the state of Johnny Cochran, and Alabama people where they contended that they have a right to continue the name because under 1999 agreement it's specifically given to the LLP. Johnny had given to LLP. The state was merely taking advantage of the fact that Mr. Cochran registered the trademark in his name individually and saying now it's a part of the state. Even our police, they admit in their confidential agreement that the estate contends, and the Cochran from disputes, that the estate owns the name. But they reached a settlement. They obviously didn't want publicity. They said, okay, well, just let's not fight. We'll just collect the license fee and give you a percentage. That's the whole deal. And it is part of the record, their settlement agreement. And the fact is that even plaintiffs admitted that the estate never owned the trademark. So there was no prima facie showing for preliminary injunction that these people even owned the trademark, protectable trademark. And McMurray made an argument. And I think what was tried, well, I'm sorry, the district court erred. Well, McMurray was not a partner of LLP. That didn't matter. All we're saying is the estate did not have something that they could assign later. They just never had a right to it. So you're saying that Johnny Cochran got a trademark on his own name, huh? Correct. And then he set up these law firms that all operated as a single entity. Independent entities. Well, before his death, they operated as a single entity. That's what I'm talking about, yeah. After his death. And basically plaintiff admits in their settlement agreement, and it's a part of the record. And then after his death, they just operated separately? Well, there was a two years of gap. And apparently that two years was because of the estate were saying, well, we got the name. The Cochran from Alabama people were saying, wait a minute, that name was assigned to us under 1999 partnership agreement. That even is in their confidential settlement agreement. So there is a fight between two of them, and that two years, there is a lapse. There is a lapse, and nobody is doing anything with that trademark. Well, the estate cannot practice law, clearly. So they're fighting. They finally reach a hush-hush settlement agreement, and they never informed McMurray, who put everything he ever had into that law firm, including his personal residence, believing that he's a bona fide successor to Mr. Cochran's practice. And he wasn't informed. And I don't believe that somehow McMurray would be a part of Unclean Hands when he didn't, his first reaction, McMurray's first reaction to the finding out of that trademark was petition for cancellation. He moved to counsel saying, look, this is all misleading. There was, he never knew about trademark. He knew about the fact that Alabama people purport to control the license. But Cochran himself did get the trademark. Cochran himself did. And there was a lot of controversy about his signature because he was ill, he had terminal cancer. But you're not pressing that on disappeal. You didn't press those arguments. No. You let those go. I just think that it's within discretion of the judge to believe or disbelieve one or another expert. It was a battle of experts. But I think that district court judge can't completely disregard ethics opinion saying, look, this is flat out misleading to the public. For public interest, you should not enforce this trademark. I think that was clearly an error on the part of the judge because there was a reputable opinion. This is all a preliminary injunction, right? Yes. You can go back and litigate all this. Yes, Your Honor, but is at some point. Just the record is exceedingly sparse at this point as to what actually, I mean, both as to what the legal parameters are for franchises. We have this one declaration and that's it, but no real legal argument. And second of all, as to what, I mean, you would expect to have a record as to how all these various franchises, firms, what exactly their relationship is, and we don't know. Your Honor, for at least, at least, I believe the court did err in issuing overbroad injunction because I don't think district court. All right, well, that's a different issue. But as to this question of whether the firms in general, whether the whole operation is a misrepresentative use of the term, the Cochran firm, because there isn't a firm. That's essentially what you're saying. In the sense that a legal firm is a firm, this isn't one. The rules, Your Honor, are set in California. If somebody is coming to California. Well, I understand that, but we don't know exactly what they were doing here. Well, this Court, I believe, has authority. And if preliminary injunction for, first of all. Do you think that the information we have is the proposed licensing agreements? Is that the information we should be looking at? Well, there was a lack of showing of irreparable harm. I don't know. I'm asking on this question. Yes. Let's stick to this question. Yes. What record do we have as to what the firm actually is with regard to its franchise? It's not illegal to have a so-called franchise firm as long as you have certain relationships with that, with those other firms, right? No, Your Honor. I disagree. The relationship has to be a partnership, a bona fide sharing liabilities. Well, I know that's what I'm saying. So you have to have certain criteria. Yes. But they also, the plaintiff in their opposition, in their reply, they have admitted that they're all independently owned, that they've entered into licensing agreements. And licensing agreements are not partnerships because they do not share liabilities. But they say they also have partnerships, as I understand it. Well, there is no evidence of that. Their proposed type of partnerships were the same proposed types of partnerships that are attached to their Second Amendment complaint. And jumping quickly to the point, how could possibly district court? Can I ask you a question? Yes, Your Honor. What does your client want? Well, I think the most egregious part of this injunction I find that the district court prohibited it. What does your client want? You know, what does he want? Justice. Oh, come on now. He wants the injunction needs to be reversed and some substantive findings needs to be made. He wants to what? He wants to be able to say that, what, that he was a partner of Johnny Cochran's? Yes. Right now he's unable to say the court also downgraded him on a paper. He's just asking you what you want. Yes, of course. You know. Yes. Does he want to be able to call himself the Cochran firm at Los Angeles? Does he want to be able to call himself whatever he's now calling himself, but say on his letterhead, former partner of Johnny Cochran? This is what Judge Prager says. What exactly does he want? He wants to be able to tell the truth about his background. Exactly. Come on. Answer the question. Yes, he wants to be able to truthfully say he was a partner of Johnny Cochran because he was. And to use the firm name. If he wants to, yes. At least I don't know if he's. Does he want to? I don't know. I mean, I have to really ask. I guess there's so much controversy now about the firm, so I don't know if he was going to make that choice, and he went to a great expense of restructuring everything. I don't know if he's going to make that choice. When you say restructuring everything, did you call himself something else? Yes. So is that no longer being sought? Is that being dropped, that he no longer wishes to use the Cochran name? I don't know. No, it hasn't been brought up. What name does he operate now? He is my partner, Your Honor. He is McMurray Hendricks, LLP. Okay. He's my partner. So if the injunction were modified to say he could put on his letterhead, former partner of Johnny Cochran, that would solve the whole problem? It certainly would help, but I would certainly want more from this Court. I wanted some ruling that it's a misleading trademark, Your Honor. We have a public's interest. The public is relying. Those cases cited in a standing issue, the public already have been injured by their structure. I mean, you can't, it's, the rules are created. In a standing issue, it seems to me, I mean, I don't think it's a standing issue, but even if it was, you know, it gets you five minutes because they'll just refile it and now they're the right name and you'll be in the same position. So I don't see how that gets you anything. Well, how do they go back on the ownership? Well, I guess they can transfer ownership, yes, but at least it dismisses the lawsuit and there was a whole host of cases. Then you have another lawsuit tomorrow and you have the same problem. So it lets me know what you want. Is there any chance that if we sent this off to a mediator of the Ninth Circuit, they might be able to work something out in terms of what you want and what they can live with? I think my client will be open to any avenues, but I certainly am, to be honest, more concerned about the public. This trademark is being enforced and this bolsters their whole position. I mean, this is just simply wrong. I mean, the rules of professional conduct in each state are designed to protect the public. So several lawsuits here mention that. I mean, is the public, if they see Cochran Law Firm, are they just lining up on the streets to get in? Is that what you're telling me? I don't know. It certainly attracts, Your Honor. It attracts the fact that the public is attracted by presentation that it's one big law firm with several offices and they don't know the truth. Which the website certainly says. The website certainly says. And they don't know the truth. And if they're being wronged by one of the local offices, well, they think it's a Cochran firm. So they file a motion, and there are motions to dismiss or improper defendant, and there is this. But that only comes up in the context of the trademark. It's not have some counterclaim saying that their whole corporate structure or partnership structure is wrong. It only comes up in the context of the trademark. So are you saying that they shouldn't, your general public interest argument is someone who operates in this fashion should not be able to use this trademark? Yes. And it should be, it's not only that. Or enforce the trademark. For example, Your Honor, let's say that there is a settlement, and this is all contingency kind of cases because it's a plaintiff's law firm. Case is settled, and fees are received. The client doesn't know that 15% or whatever percentage is being shared with Alabama licensor. Let's say that there is a problem over the fees. The problem is we don't know that either with regard to the 40 or 50 offices. I don't know how many offices there are, but there's a big long list on the website. We don't know what their relationship is with those firms, do we? Their relationship is admitted to be a licensing agreement, and the plaintiff conceded. Do we know that they don't share liability? It's the same ones. Do we know they don't have conflict checks? Do we know that they're not all mutually responsible for each other? We don't know that. The evidence was presented to the court at least sufficient enough to conduct evidence. That's what I don't understand. But anyway, you're way out of time. Yeah, you're out of time. We'll hear from the other side. Good morning. Richard Wertz on behalf of the Cochran Firm. Are you guys brothers? Are we brothers? Yeah. I'd like to think so, but we're not. Are you? He's my co-counsel, but we're not brothers. You look like you are. Like I said, I'd be honored to have him as my brother. Your Honors, this is a trademark case. It's not a partnership dispute. It's not a corporate dissolution proceeding. What we have here is we have a preliminary injunction where the Cochran Firm, after submitting sufficient evidence, prevailed upon Judge Otero that it did have control of the trademark, that the trademark was enforceable, and that Mr. McMurray should not be able to run his business using the Cochran Firm mark. Now, we need to note that... Are you still objecting to him using the term that he's saying on his letterhead? Suppose he kept the same name he's now operating and he put it in his letterhead, former partner of Johnny Cochran. I understand that point, and the firm does object to that. We don't object to the use of, in a bio, saying, I used to work at, you know, because that's factual. Well, he was representative of the public as a partner, so why shouldn't he be able to say he was a partner? Because there's a difference. The difference is that by putting it on his letterhead, that's advertising. That's actual trademark infringement. He's using it to garner commercial advantage, and that's exactly why we get a trademark to put in place. Was he a non-equity partner? That's not a fair use. He was a non-equity partner. Suppose it was undeniably true. It wouldn't be a fair use? It would not be a fair use because it's commercial. As long as, if he's putting it on business cards, if he's putting it on his letterhead. Well, that's all you're doing. You're using Johnny Cochran's name to get business. And he's dead. He's been dead for a while. Johnny Cochran obtained a trademark and federally registered it. He then is trying to. But it's a name. I mean, there's a whole. This hasn't been really briefed in this case, but it's my understanding that if somebody is telling a truthful fact, i.e., I'm a former partner of Johnny Cochran's. For you to say he can't say that when it's a truthful fact can't possibly be trademark law. He can say it, but he can't advertise it. Why? Why? Because then he is. That's one of the big curses of the legal profession when they start letting lawyers advertise the way they do now. Well. We're no longer a profession. We're a business. I don't know what the biggest firm is, but down in San Diego, you know, there's Jones Day. And if I was a former partner with Jones Day, I should not be able to have on my business card former partner of Jones Day. Why not? Because I am Richard Wertz's attorney. I am not an attorney affiliated with Jones Day. That in and of itself is deceptive. What have you got to do with Johnny Cochran? He's gone. You're representing to the public that somehow he's still around. The goodwill established by Johnny Cochran and the success he had has now been infused into the trademark. What is the goodwill that Johnny established? I think he's, well, there was the O.J. case. What? The O.J. Simpson case. He was the lawyer on the O.J. Simpson case. Yeah, I know that. Right. And where's O.J. Simpson now? Well, success doesn't always breed familiarity, right? Good behavior. But, well, my instinct is that this point cannot be correct. I don't know if it's dispositive of anything. It hasn't really been briefed. But I don't know where you get the notion that, I mean, if somebody is, he's not saying I'm a former partner of the Cochran firm. He's saying I'm a former partner of Johnny Cochran, which is true, or if it were true. I'm not sure you dispute whether it's true. No. But if it were true. It's not in the record. But, you know, he's saying things when you call up the firm. The Cochran firm doesn't exist anymore. I'm the former managing partner of the Cochran firm. It's Cochran firm, Cochran firm. He knows the intrinsic value of the Cochran firm trademark. He's playing on that. He's commercializing it. And that's what's wrong. If it is part of his truthful, factual history, he should put that on his resume. He should not put it on his letterhead. When was the last time any law firm advertised their firm, Jones & Jones, formerly of a separately owned entity? Nobody does that. Oh, probably. Let me ask you about the, about the, I don't know if it is an unclean hands argument. But whatever it is, whether it's an unclean hands argument or an argument specific to trademark law. I mean, there certainly is trademark case law saying that you can't enforce a trademark if it's a misrepresentative trademark. Is that right? That's probably an inaccurate generalization. Okay. And so the, it has been, certainly from the outset, the allegation has been made that this firm, essentially as I understand it, this firm is not a firm within the meaning of the legal community. Because in the legal community, firm has, there are certain requirements to be a firm and this one isn't meeting it. That's been alleged at least. Is that right? That's been argued by the defense. It was raised in the preliminary injunction motion. And it was measured and weighed and rejected. Well, what did the district court say? They said almost nothing. Well, the district court said that it's not going to be persuaded by Ms. Peck's declaration, that it's going to measure it himself. And it did so. And he concluded that it was legal. And I suspect, I can't, I don't know how he did it. I mean, it seemed to me, from what I know about the, from looking at some ethics stuff myself, that there's, depending precisely what the facts are, and that's what I don't know, it may well not be legal. And it very well may not be. It may not be within the, I don't know, legal, within the ethical requirements of either the California or the ABA. If, for example, there is a mutual liability and if there isn't, if it isn't being treated as the same firm for conflict checks purposes. And I don't know what we know about that. Well, what we know is, let's take the California situation. The proposed agreement between the California entity and the national firm was going to be a partnership agreement in which a license for the name was going to be given to the California entity. A general partnership has unlimited liability to the general partners. And so by that structure, there's two things that happen. One, we solve the ethics issues of liability. And two, we solve the fee-sharing arrangement. Because as partners, you can share fees and that disclosure doesn't need to work. So your understanding is that the, that there are two things going on. There is both a licensing of the name and a partnership so that all of these firms are partners with each other. That's my understanding. I've looked at some of the arrangements and that's my understanding. I haven't seen all of them. We haven't really gotten into discovery in this case. We haven't started to dig in. We didn't know how far it was going to go. Taking you up on your offer for mediation, our clients would love to get into mediation and figure out a resolution for this. It shouldn't be that. Well, we have a terrific mediation office, as you may know, and they work wonders sometimes. That then will, with a little encouragement, one day we'll know. Let me ask you now. I mean, are all these firms that are out there that refer to Johnny Cochran or the Johnny Cochran firm or whatever they are, are they all, do they operate as a single firm? They operate as an enterprise. That would be the best way for me to explain it as I understand it at present. I think what it means is in every state there is a core group of lawyers that want to be affiliated with the Cochran firm. The Cochran firm national then becomes partners and licenses the Cochran firm trademark along or to that entity. For example, in Georgia. Are they franchises? I know under the franchise law you can create a franchise by certain elements, but it's not technically called a franchise. It's considered to be a national firm with local offices in which they have partnership arrangements, which provides for the use of the Cochran firm trademark. And they're all independent? The state firms are independent, but they're tied to national through the licensing partnership agreement. So what does the national do? The national just happens to be the anchor firm that was originally started by Johnny Cochran. Okay, what does that do? What service does that do? They're a law firm in Birmingham, Alabama. Yeah. So what do they provide? They provide legal services in Birmingham, Alabama. And when needed, the partners there participate in litigation cases wherever they may be needed in various states. So they don't operate as a single firm? I don't know. I'm reluctant to identify and define what single firm means. It seems a little preliminary, a little early to get into that, because what we're here on is a preliminary injunction motion to decide whether an infringer should be stopped from using a mark that is not owned by that infringer. What is your showing of irreparable harm here? It's not simply use of the mark, correct? Do you have to show something more than that? Not in trademarks. In trademarks, if you show use of the mark, it infringes on the goodwill, and that is established as irreparable harm under the rent-a-center case. So you just have to show use of the trademark? That's right. Because if someone started using Coca-Cola and putting it on a can of Coke or a can of soda, that's irreparable harm. That's all you have to show. Yeah, okay. Now, do you own the trademark? Yes. Not me personally, but my client does, the Cochran Firm PC. And I could walk you through the history. That entity has existed since 1998. The Cochran Firm owns it. Now, where's the Cochran Firm? The Cochran Firm PC is an Alabama professional corporation located in Birmingham, Alabama. So they own the trademark. They were assigned the trademark and entered into a settlement agreement with the estate of Johnny Cochran, because there was dispute as to whether they had outright rights to it or whether the estate had it. And that was resolved through a settlement agreement. So if you go to the United States Patent and Trademark Office and you look up the trademark, you will see the Cochran Firm as the assignee of that trademark. They are the sole controlee, controller. So the folks in Alabama own it all? Yes. So you represent them? I represent the Cochran Firm PC, which was formerly known as the Cochran Firm. You refer to Alabama. You represent the Alabama Cochrans? Yes. Okay. And I'm not sure it's necessary to go into when the amendments were made and when they were filed, because the essence is that the corporation always existed. So we're not really dealing with this franchise business? No. You're dealing with whether or not Mr. McMurray can use the trademark. And he can't. He doesn't own it. He was assigned the trademark. So there's no franchise here? Not anymore. There was never a franchise. Never a franchise? He has no equitable rights in the trademark. I'm not talking about him. You've never had a setup where you had a franchise? The franchise law is complex. And there are certain elements under the statutes which create a franchise. There's a whole list of questions I can ask you about that. Okay. I can see if I can answer them. No, I know it's complex. If by setting up a nationwide enterprise. But you're saying that we're not dealing with a franchise. I wouldn't call it a franchise. It's not marketed as a franchise. People don't buy franchises. There's no control of how big the office space needs to be. You don't have to buy a certain brand of product from the national firm. All the district court had to say about this, as far as I can tell, was twice. On the plenary injunction, on the summary judgment, he said that the structure has none. There's no case law saying that it's relevant to the trademark action whether they have an ethical or legal business structure. That's wrong, isn't it? Well, it's not wrong because the trademark analysis is who owns it and who can infringe. So to that narrow extent. But there also is case law that says that if you're using a trademark in a misleading fashion, you don't get to enforce it. If you're using it in a deceptive way. Right. And if you look up the case law in that area. Which would include saying that your business structure is X when it's really Y. No, I don't think that's the nature of the trademark deception. I think the trademark deception is my product is a Coca-Cola when it's not a Coca-Cola. Why isn't it my firm is a firm when it's not a firm? Well, it's the Cochran Firm and you're picking up the goodwill in the background of the company. Right. And if it's not a firm, then you have a misrepresentative trademark. I'm sorry, Your Honor, I can't agree with that. Because in each State where the Cochran Firm is operating, there is a firm that is registered. Well, that's the question, not the answer. But the question, i.e., is there a Cochran Firm, one Cochran Firm, is that people are representing to be part of when they're not, is a legitimate question, which is a trademark question. I don't think that's. Or this is a trademark enforcement question. I don't think that's what the trademark law is, Your Honor. And I have to disagree with you there. I think the trademark law on deception is whether or not you're holding out one product as another product. Right. A firm is a non-firm is a firm. Well, no. Whether this firm, whether Joe product is the same as fake Joe product. Well, it may not matter in some other context, but in this context, whether it's a firm matters to people. And it matters as to whether it's a legitimate operation. Well, and when someone hires the Cochran Firm, they not only get the back, the power of the national firm out of Birmingham, Alabama. Well, that's the question, not the answer. I mean, do they? I mean, the allegation is no, they don't. These are all independent operations. I mean, if I were you, I'd be standing up saying, well, they haven't made out the record yet. Maybe they'll be able to. But it's a legitimate theory is what I'm trying to say. It may be a legitimate theory. I don't even want to go that far. But I think you're right. It's not in the record at this point. It's not part of the preliminary injunction analysis. Well, because the district judge said at the summary judgment stage that incorrectly, it seems to me, that it's not a relevant question. I would agree with the district court judge on this one. I don't think that's the nature of deception under the trademark law. Deception goes to more of a counterfeit. To what? I'm sorry? It goes to more of a counterfeit. Is this a Google phone or is this a Chinese Google phone? That's not exactly what they're saying. This is a counterfeit. It's not really a national firm. They're saying there are, but they're not. It could be true and it could not be true, but that's what they're saying. Well, we're not saying that this national firm is different than another national firm. We're saying the Cochran firm, the mark, produces a certain quality of lawyers to which we sort of brand the Cochran firm mark. How do we know that? How does who know what? How do we know that? How do we know that? Yeah. What brand do they produce? Tell me. They produce the Cochran firm brand. What's the brand? The brand is a plaintiff's law firm that wins and gives great effort and will charge forward on every case as hard as they possibly can. That's the Cochran brand. They're a winning brand. It's the same effort that won for O.J. Simpson. It's the same brand. I'm going to say that I find the whole notion. They never lose? Like you have Morrison and Foster running around getting firms in every state that there aren't really firms, but they're simply saying you can use our name and say, you know, you have good lawyers and we're going to give you our name. That doesn't seem the way legal practice is supposed to operate. I don't know if this should be the poster boy case to decide that. I think that's to be decided on a different day. We have a very narrow issue here. This is an appeal of a preliminary injunction. Was there a likelihood of success on the merits at the time the order was granted? As I say, what's troubling me is that the district court cut off the inquiry. If he had made the inquiry and concluded that, in fact, you were either that the criteria were met or that there weren't any criteria or something, but he said it's not relevant to the inquiry. Well, I don't have a response to that. So all Mr. McDonnell wants to do is put down on his stationery, put his name, and say that talk about, you know, he was whatever it was at the Cochran firm. What's wrong with that? He can put it on his bio. He cannot put it on the letterhead. Why? Why not? Because that is commercial use, which is in violation of the law. If you put it on your website, that's not the same thing. It's not. If it's on the front page of the website and he's marketing to it, that's wrong. If it's on a click on a PDF of a bio. Do you think that when law firms put resumes on their websites, they're using it for marketing? And they say Mr. So-and-so went to Harvard and then he went to Yale and then he won the following seven cases, that's not marketing? That is marketing in a different way. And in between he worked for Johnny Cochran. I think it's – He was Johnny Cochran's partner. If it's truthful, he can say it there. But he can't put it on the name, the brand. Even if it's truthful? You said if it's truthful, he can put it in his bio. But even if it's truthful, he can't put it in the – If it's truthful, he cannot use it as a brand. And by putting it on a letterhead, he's using it as a brand. That's the whole essence of trademark law. Well, can he, as you see now, can he put an ad on a bus and have his picture there and indicate that the former partner of Johnny Cochran? Absolutely not. Why? That's branding. That is a use – that's like saying we taste like Coca-Cola. No, no. Coca-Cola's got nothing to do with this. What's Coca-Cola got to do with it? It's another brand. I'm trying to give you an analogy so you can see the distinction between saying an introduction at a seminar and saying – But the difference is that Johnny Cochran was an actual person and he was an actual partner. So it's – I mean, that's why there's a whole – I mean, if you start taking that position, then you're getting into – And this would start descending into a non-trademark, it seems to me. People are allowed to use their own names for it. If somebody's name was Johnny Cochran, they could practice law as Johnny Cochran, right? Absolutely. I agree with that. Right. Okay. We're in agreement. Here's, I think – well, let's flip it over so you can see why he can't use it. He wants to use it because it has value. And because it has value, it's a branding. It's a commercialization of the Cochran mark. But it's not – but that's different from the – my understanding is of trademark name from the mark. The mark is the Cochran firm. That's right. Right. That is different from making a factual statement as to his historical relationship. I don't understand – he's not saying I am the Cochran firm. He's saying I was a partner of Johnny Cochran's. That's fine. He can say that, but he can't put – He just said he can't. He can't put that on his letterhead. Why not? Because that's not his name. His name is the McMurray – What if he tattoos it on his forehead? I don't know. No, he can't do that. He has a nice picture like this. That's not fair use. Although, if he wanted to put the Cochran firm on his forehead and walk around for his life – That's the Cochran firm. That's different. Okay. I think you understand a great deal. Okay. Thank you. Thank you. Yeah. All right. If you have two minutes, Your Honor. It's an important issue regarding irreparable harm. I believe the standard was incorrect. I just wanted to address it. Well, since you're a Russian, you can get up there. Thank you. I wanted to address the issue of the standard for irreparable harm, and we have a winter case that – I'm sorry, overturned the ruling of the Ninth Circuit saying that irreparable harm is never presumed, and it has to be a likelihood, a strong likelihood, and it has to be shown by probative evidence. Now, the reason that district court completely disregarded and erred, while these people were seeking preliminary injunction, on their website of their local offices, they were of Los Angeles, they're actually continuing to advertise him against McMurray's demand, which is part of the exhibit even to their Second Amendment. I don't know what you're talking about. Well, it's irreparable harm. Somebody cannot be irreparably harmed. You have to show an injury to the goodwill, is your position. Yes. You're saying if they're touting this fellow being a great lawyer, they're not – how is he hurting the goodwill of the firm? Yes. The public – They're saying that he has all of these messy things going on with his law firm, and that he didn't pay us, and all of these other things are hurting the goodwill, the way that he operates. But that would not hurt the public. The public still would find an aviated lawyer. And finally, the last argument, Your Honor, I think it's preposterous that McMurray cannot use the statement that he was a former partner of Johnny Cochran, because we actually found a document that he was a former partner post-injunction presented to the district court. Now it's there. He was a partner. Now we have the evidence. Now we have two documents saying, you know, McMurray is invited to work as a partner. He was a partner. They presented him to the public. And he's been injured severely because he was literally prohibited from stating the word Cochran anywhere in his bio, not even on a website. And a lawyer's asset is what he was. He worked. He worked hard for Johnny Cochran. The verdicts are there. He was contributing in Johnny Cochran's success. Johnny Cochran acknowledged that in writing that his success is by greatest part because of McMurray. And now district judge prohibits somebody from stating who he was. I think it's unconstitutional, flat out. So he's got a letter from Johnny Cochran? Yes. It's 2003 letter. He was admitted as an exhibit, as an exhibit to the opposition to preliminary 2003 partnership letter signed by Johnny L. Cochran that his success is by great part because of McMurray's achievements. You can put that on the ad on the bus. Well, not now. He's going to be held in contempt, Your Honor, right now unless this court overturns the injunction. He's going to be held in contempt. So that is my last argument. Thank you. And with that, I will submit. Okay. Good. You want to, we'll find out about the mediation thing. Thank you, Your Honor. Yeah.
judges: Amon, Pregerson, Berzon